291 N.J. Super. 430 (1996)
677 A.2d 795
STATE OF NEW JERSEY, DIVISION OF MOTOR VEHICLES, PLAINTIFF-RESPONDENT,
v.
LOUIS CARUSO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1996.
Decided June 26, 1996.
*432 Before Judges PETRELLA and PAUL G. LEVY.
Richard T. Kaltenbach argued the cause for appellant (Ferrara, Siberine, Woodford & Rizzo, attorneys; Mr. Kaltenbach and Paul A. Woodford, on the brief).
Vicki A. Mangiaracina, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Mangiaracina, on the brief).
The opinion of the Court was delivered by PAUL G. LEVY, J.A.D.
N.J.S.A. 17:29A-35(b) establishes a Merit Rating Plan under which the New Jersey Division of Motor Vehicles (DMV), levies *433 surcharges each year on drivers who have accumulated six or more points on or after February 10, 1983, in the amount of $100 plus $25 for each point over six. Drivers convicted of operating a motor vehicle under the influence of liquor or drugs (N.J.S.A. 39:4-50) or refusing to submit to a chemical test (N.J.S.A. 39:4-50.4a) are surcharged $1000 for the first two convictions and $1500 for the third, each year for three years. DMV remits the funds it collects to the New Jersey Automobile Insurance Guaranty Fund (N.J.S.A. 17:33B-5) to be transferred to the Market Transition Facility Revenue Fund (N.J.S.A. 34:1B-21.12). In 1994 N.J.S.A. 17:29A-35 was amended to authorize the Director of DMV to issue a certificate of debt to the Clerk of the Superior Court, when a driver fails to pay a surcharge. The docketing of the certificate "shall have the same force and effect as a civil judgment," with all the remedies and proceedings for collection, "but without prejudice to any right of appeal." L. 1994, c. 64, § 1.
Defendant Louis Caruso accrued over $14,000 of surcharges since 1985, and DMV utilized this procedure in order to collect the accruals, with due notice to defendant. Defendant moved to set aside the resulting judgment, and appeals from the denial of his motion. He contends that: DMV should be estopped from arguing that the surcharges constituted a debt, since it previously contended that surcharges were not a debt in a bankruptcy case;[1] the amendment of N.J.S.A. 17:29A-35 should not be applied retroactively; the amendment constituted an ex post facto law and imposed double jeopardy; and the amendment violated defendant's right to due process.
Defendant has frequently violated the statutes regulating traffic and driver licensing. He accumulated forty-seven points from 1979 to 1983, from eleven offenses for speeding, two for disregarding stop signs, and one for failing to observe a traffic control *434 device. One of his speeding violations was for driving eighty-four miles per hour in a forty-mile-per-hour zone. Defendant was involved in four accidents in 1980, 1981 and 1984. At the time of the 1984 accident, he refused to submit to a chemical test, and his license was suspended for this violation. Nevertheless, defendant operated a vehicle while suspended and while intoxicated in 1985, 1987, and 1990; he was convicted of each violation and his license was again suspended. The latest suspension was for ten years.
In addition to the suspensions, DMV assessed insurance surcharges against defendant for his various offenses every year from 1984 through 1994, except 1991, pursuant to N.J.S.A. 17:29A-35, and sent him bills for the amounts due. Defendant paid only his 1984 surcharge; the balance due on the unpaid surcharges was $15,100 as of October 2, 1994. Each time defendant failed to pay his surcharge, DMV suspended his driving privilege.
On October 2, 1994, DMV issued and sent defendant a "Proposed Notice of Judgment," advising that since defendant's driving privilege was suspended and since he operated a vehicle during the suspension period, "we now have the authority to impose a judgment against you pursuant to N.J.S.A. 17:29A-33." The notice gave defendant the option to pay the amount due ($15,100) in one lump sum or in five monthly installments. If no payment was received by November 1, 1994, DMV stated it would file a certificate of debt with the Superior Court.
On the back of its notice, DMV explained that once it filed the certificate of debt, it "may take judgment action against you and collect the surcharge debt through involuntary means," including liens against real property and garnishment of salary. DMV advised defendant that he was "not entitled to a hearing in regard to this notice as you have exhausted your right to appeal the billings on which this notice is based." However, DMV gave defendant an address and phone number to report any "error regarding a surchargeable offense on your driving record."
On October 7, 1994, defendant's attorney wrote to DMV, questioning its authority to impose judgment, and questioning the *435 violations for operating a vehicle during a suspension period. Defendant did not otherwise dispute the $15,100 due. DMV responded on October 20, 1994, citing N.J.S.A. 17:29A-35 for its authority. DMV also reduced the amount due by $750 since an April 14, 1991, violation for driving while suspended was not surchargeable.
On December 6 and 14, 1994, DMV's collection attorney wrote to defendant advising that the judgment against him had been docketed and that he now owed $17,253.40 as of December 6 and $17,268.43 as of December 14.[2] On January 6, 1995, DMV's attorney issued defendant an "Information Subpoena and Written Questions" asking about his assets and income.
Defendant moved to set aside the judgment and quash the subpoena. The motion judge denied the motion, but stayed compliance with the subpoena pending appeal, finding that the filing of an ex parte certificate of debt did not violate due process, since it was "a mere additional collection method," there was notification that it would be filed, and there was a right to appeal. He agreed with DMV that the entry of the judgment did not constitute a new liability, but was an "enforcement tool." He rejected defendant's argument that the new collection scheme changed payment of surcharges from voluntary, as a condition to the driving privilege, to mandatory. The judge reasoned that since the entry of the judgment was neither a second judgment for the same offense nor punitive in nature, it did not constitute double jeopardy or an ex post facto law.

I.
Defendant argues that DMV should be judicially estopped from asserting that the surcharges imposed under N.J.S.A. *436 17:29A-35 constitute a debt, since DMV took the position that the surcharges were not a debt in a prior bankruptcy case, Lugo v. Paulsen, 886 F.2d 602 (3d Cir.1989). Prior to 1994, N.J.S.A. 17:29A-35 contained the following with respect to the surcharge scheme under the New Jersey Merit Rating Plan:
There is created a New Jersey Merit Rating Plan which shall apply to all drivers and shall include, but not be limited to, the following provisions:
(1)(a) Plan surcharges shall be levied, beginning on or after January 1, 1984, by the Division of Motor Vehicles on any driver who has accumulated, within the immediately preceding three year period, beginning on or after February 10, 1983, six or more motor vehicle points, as provided in Title 39 of the Revised Statutes, exclusive of any points for convictions for which surcharges are levied under paragraph (2) of this subsection; ....
....
(2) Plan surcharges shall be levied for convictions (a) under R.S. 39:4-50 for violations occurring on or after February 10, 1983 and (b) under [N.J.S.A. 39:4-50.4a] ... for violations occurring on or after January 26, 1984.
....
If, upon written notification from the Division of Motor Vehicles, mailed to the last address of record with the division, a driver fails to pay a surcharge levied under this subsection, the license of the driver shall be suspended forthwith until the surcharge is paid to the Division of Motor Vehicles;....
[L. 1990, c. 8, § 35.]
The 1994 amendment added the following:
If a driver fails to pay the surcharge or any installments on the surcharge, the total surcharge shall become due immediately.
....
In addition to any other remedy provided by law, the director is authorized to utilize the provisions of the SOIL (Setoff of Individual Liability) program established pursuant to P.L. 1981, c. 239 (C. 54A:9-8.1 et seq.) to collect any surcharge levied under this section that is unpaid on or after the effective date of this act. As an additional remedy, the director may issue a certificate to the Clerk of the Superior Court stating that the person identified in the certificate is indebted under this surcharge law in such amount as shall be stated in the certificate. The certificate shall reference the statute under which the indebtedness arises. Thereupon the clerk to whom such certificate shall have been issued shall immediately enter upon the record of docketed judgments the name of such person as debtor; the State as creditor; the address of such person, if shown in the certificate; the amount of the debt so certified; a reference to the statute under which the surcharge is assessed, and the date of making such entries. The docketing of the entries shall have the same force and effect as a civil judgment docketed in the Superior Court, and the director shall have all the remedies and may take all of the proceedings for the collection thereof which may be had or taken upon the recovery of a judgment in an action, but without prejudice to any right of appeal.... The *437 director shall provide written notification to a driver of the proposed filing of the certificate of debt 10 days prior to the proposed filing; such notice shall be mailed to the driver's last address of record with the division.
[L. 1994, c. 64, § 1.]
In Lugo v. Paulsen, supra, 886 F.2d at 603, argued and decided prior to the 1994 amendment, the issue was whether an insurance surcharge, levied by plaintiff under this provision, constituted a debt under the Bankruptcy Code, and if so, whether it was dischargeable under Chapter 7. Paulsen, then the DMV Director argued, and the Bankruptcy Court agreed, that the surcharge was "an additional premium required for future liability insurance and, as such, it would not qualify as a debt incurred pre-petition." Id. at 605. The Third Circuit disagreed, noting that the definition of debt in the Bankruptcy Code, a "liability on a claim," 11 U.S.C.A. § 101(11), should be liberally interpreted. Id. at 605. The court reasoned that the surcharge was not an additional premium for future insurance coverage, since the debtor did not own an automobile and thus was not required to carry insurance. Id. at 606.
The DMV further argued that the surcharge did not constitute a debt "because it cannot be reduced to a money judgment and therefore does not constitute a `right to payment' under the definition of claim in 11 U.S.C. § 101(4)(A)." Ibid. The court also rejected this argument, since the statutory provision for suspension of the driver's license was an adequate enforcement mechanism. Ibid.
Success in the prior proceeding is a prerequisite for the application of the doctrine of judicial estoppel. In Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 620, 581 A.2d 91 (App.Div. 1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991), we did not bar homeowners from seeking to confirm a prior arbitration award. Although they had previously asserted that the arbitration award was not binding, they were "wholly unsuccessful" in that assertion. Ibid.; see also State v. Gonzalez, 273 N.J. Super. 239, 256-57, 641 A.2d 1060 (App.Div. 1994), aff'd o.b., 142 N.J. 618, 667 A.2d 684 (1995) (Skillman, J.A.D., dissenting) (noting the requirement of success in the prior proceeding, despite the contrary holding of *438 Levin v. Robinson, Wayne, and LaSala, Esqs., 246 N.J. Super. 167, 586 A.2d 1348 (Law Div. 1990)).
Here, DMV did not succeed in Lugo (the prior proceeding). The Third Circuit rejected its position that the surcharge was a debt. Thus, the judge did not abuse his discretion in failing to preclude DMV from taking a contrary position here. Further, one of the bases for plaintiff's argument in Lugo was the absence of an enforcement procedure. 886 F.2d at 606. However, the 1994 amendment has now established such an enforcement procedure. Thus, DMV has changed its argument in accordance with the change in the statute. Moreover, its positions are based on different legal rather than factual positions. Whether a surcharge under the statute is a debt is a legal determination. Here, as in American Employers' Ins. Co. v. Elf Atochem N. Am., Inc., 280 N.J. Super. 601, 611, 656 A.2d 58 (App.Div. 1995), there was an intervening change in the law: the amendment to N.J.S.A. 17:29A-35.
Finally, we agree with DMV that defendant's actions should be considered. The application of judicial estoppel is discretionary, depending upon the merits of each case. Levin, supra, 246 N.J. Super. at 184, 586 A.2d 1348. Defendant argues that he may avoid paying the surcharges if he chooses to forfeit his driving privilege. However, he has continued to drive, not only while his driving privilege was suspended, but further while intoxicated on three occasions in 1985, 1987 and 1990. His accumulation of points, involvement in accidents, and driving while intoxicated show that he is a most unsafe driver and that he has flaunted laws which attempt to protect the public safety on the roads. It would be unjust to apply the doctrine of judicial estoppel in the face of Caruso's conduct. The judge did not abuse his discretion in failing to preclude DMV from arguing that the surcharges constituted a debt.

II.
Defendant contends that the collection scheme authorized by the 1994 amendment to N.J.S.A. 17:29A-35 should be applied *439 prospectively, only to surcharges imposed after the effective date of the amendment. He argues that the retroactive application of the amendment to him violates his right to due process.
The amendment specifies that DMV may utilize the Setoff of Individual Liability program "to collect any surcharge levied under this section that is unpaid on or after the effective date of this act." L. 1994, c. 64, § 1. The procedure for issuing, recording, and docketing the certificate of debt as a judgment follows, "[a]s an additional remedy." Ibid. Thus, the amendment applies to all surcharges that are unpaid as of its effective date, June 30, 1994. Ibid. In addition, the Statement accompanying S. 1148, which became L. 1994, c. 64, § 1, indicates that the purpose of the bill was to collect surcharges then due but not paid.
Defendant further contends that this retroactive application of the amendment violates his right to due process. He cites Phillips v. Curiale, 128 N.J. 608, 620, 608 A.2d 895 (1992), in which the Court explained that retroactive application of a statute violates due process if it interferes with "vested rights" or is "manifestly unjust." A vested right is "a present fixed interest"; it is more than simply the continuance of present law. Ibid., quoting Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 384, 102 A.2d 587 (1954). The determination of whether there was a "manifest injustice" requires a weighing of the public interest in the retroactive application of the statute against the affected party's reliance on the previous law, and the consequences of that reliance. Id. at 625, 608 A.2d 895.
Here, defendant claims that his vested right was his "election available under the prior statute to not seek renewal of his driving privileges." He claims that the manifest injustice was the reclassification of the surcharge as a retroactive debt. To the contrary, we conclude there was no reclassification of the surcharge as a debt. It was always a debt, as the court held in Lugo, supra, 886 F.2d at 604-07. DMV had no "present fixed interest" in avoiding payment of the surcharges levied against him. Phillips, supra, 128 N.J. at 620, 608 A.2d 895. He simply anticipated continuance *440 of the then-current law. Ibid. Moreover, as the DMV points out, although he was unable to renew his driving privilege, he continued to drive illegally with impunity. This is precisely the problem which the Legislature intended L. 1994, c. 64, § 1 to correct, and the collection of surcharges due does not constitute any manifest injustice or violation of any vested right.
The 1994 amendment did not change any substantive liability. Rather, it established new remedies for the collection of surcharges. The public policy in favor of funding the New Jersey Automobile Insurance Guaranty Fund, so that claims can be paid in accordance with the Fair Automobile Insurance Reform Act of 1990, N.J.S.A. 17:33B-1 to -63, outweighs the burden on defendant. Requiring defendant to finally pay the surcharges which he owes is not particularly harsh and oppressive, and does not defeat his reasonable expectations. There was no violation of his right to due process here.

III.
We have carefully reviewed defendant's arguments claiming the 1994 amendment is an ex post facto law, that it constitutes double jeopardy by imposing a new penalty for a prior offense, and that the 1994 amendment and the docketing of the judgment against him violated the basic elements of procedural due process. We conclude those arguments are clearly without merit. R. 2:11-3(e)(1)(E). See Clark v. N.J. Div. Motor Vehicles, 211 N.J. Super. 708, 711, 512 A.2d 588 (App.Div. 1986) (imposition of these surcharges was not punitive in nature); Doe v. Poritz, 142 N.J. 1, 47, 662 A.2d 367 (1995) (legislation that is punishment for purpose of the ex post facto clause is also punishment for purpose of the double jeopardy clause). As to defendant's due process claims, he admits he received notice of the filing of the certificate of debt, and the record supports the DMV position that defendant was notified of his right to a hearing on every surcharge bill but he never asked for one. See New York, Susquehanna and Western R.R. Co. v. Vermeulen, 44 N.J. 491, 501, 210 A.2d 214 *441 (1965) (N.J.S.A. 54:29A-57 did not deny procedural due process in providing for docketing of certificate of debt to collect tax owed by railroad).
Affirmed.
NOTES
[1] That case involved a defendant other than Caruso. See Lugo v. Paulsen, 886 F.2d 602 (3d Cir.1989).
[2] N.J.S.A. 17:29A-35 authorizes a fee of 20% "in lieu of the actual cost of collection" if further action to collect is required after the certificate of debt is entered. After $750 is deducted from the $15,100 due, and twenty percent is added, the amount due would be $17,220.